IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL C. YANCHAK, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br>v.<br><br>CANNERY CASINO RESORTS, LLC and WASHINGTON TROTTING ASSOCIATION, INC.<br><br>Defendants. | Civil Action No. 2:13-cv-01831-MRH<br><br>Judge Mark R. Hornak<br><br>Class and Collective Action<br><br>**JURY TRIAL DEMANDED** |

**ORDER GRANTING PRELIMINARY APPROVAL OF
JOINT STIPULATION OF SETTLEMENT AND RELEASE, CERTIFYING
SETTLEMENT CLASS, APPOINTING CLASS REPRESENTATIVE AND CLASS
COUNSEL, APPROVING CLASS NOTICE, ENJOINING ABSENT CLASS MEMBERS'
LITIGATION OF RELEASED CLAIMS UNTIL FILING OF REQUEST FOR
EXCLUSION, SETTING DEADLINE FOR OBJECTIONS, AND
SCHEDULING FAIRNESS HEARING**

**I.   BACKGROUND**

1.   Michael Yanchak ("Plaintiff" or "Representative Plaintiff") filed a Complaint on December 31, 2013, alleging that Defendants failed to compensate him and Class members employed as Table Games Dealers at the Meadows Racetrack and Casino (the "Meadows") for all of the time that they actually worked, at minimum wage, or their regular and/or overtime rate, as appropriate, due to Defendants' policy of rounding dealers' punch-times, and Table Games Department practices that required dealers to perform pre- and post-shift work "off the clock."[1] Plaintiff further alleged breach of contract and unjust enrichment by Defendants' alleged failure

---

[1] Defined terms have the same meaning set forth in the parties' Joint Stipulation of Settlement and Release ("Settlement Agreement"). For ease of reference, those definitions are occasionally repeated herein.

to pay for all hours Meadows dealers actually worked within the Class Period due to the policies and practices complained of.

2. Defendants deny all of Plaintiff's allegations and maintain that their compensation practices were lawful. See generally Dkts. 13-14 (Defendants' Answers).

3. The Parties engaged in settlement negotiations over several months, including mediation with a private mediator, in accordance with the Local Rules of this Court. When mediation failed, the Parties engaged in discovery and vigorous motions practice on Defendants' Motion to Dismiss (Dkt. 22) and Plaintiff's Motion for Conditional Certification and Notice to Potential Opt-Ins (Dkt. 29).

4. After the briefing of these motions and the addition of 11 new FLSA opt-ins, the Parties renewed settlement discussions. In mid-2015, following extensive discussions on their respective positions, the Parties reached an arms' length class-action settlement.

5. Under the Settlement Agreement, the Parties have agreed that this action should be certified as a class action pursuant to Fed.R.Civ.P. 23(b)(3); the Defendants are to pay an aggregate maximum total payment of $350,000 ("Maximum Settlement Amount").

6. Class Counsel will apply for a percentage of the Maximum Settlement Amount as attorneys' fees. Class Counsel will file a motion for approval of fees, along with a motion for final approval of the Settlement Agreement, which motions will be decided by the Court after a fairness hearing. See Fed. R. Civ. P. 23(h).

7. Each Class Member who does do not exclude himself or herself from the Settlement Class after receiving the Notice (an "Authorized Claimant") will receive a proportionate amount of the Net Settlement based on the percentage of shifts he/she worked of the total amount of shifts worked by the entire Settlement Class during the Class Period.

Accordingly, the Parties estimate that each Authorized Class Member will receive approximately $0.95 per shift. Based on an average hourly wage of the Settlement Class of $7.48, each Settlement Award will equate to approximately 8 minutes of work for each shift worked by an Authorized Claimant during the Class Period.

8. Upon the Settlement's Effective Date, and except as to such rights or claims as may be created by the Settlement Agreement, each Class Member who has not submitted a valid Request for Exclusion, shall be deemed to have, and by operation of the Final Judgment and Order shall have, fully released and discharged Defendants and related parties released under the Settlement from all Released Claims. In addition, as of the Effective Date, and except as to such rights or claims as may be created by the Settlement, each Class Member who has not submitted a valid Request for Exclusion will be forever barred from commencing, instituting, prosecuting, and obtaining relief on each and every Released Claim against any and all Released Parties.

9. The Notice mailed to the Settlement Class will specifically set forth the claims being released.

10. Class Counsel will apply for a percentage of the Maximum Settlement Amount as attorneys' fees. Class Counsel will file a motion for approval of fees, along with a motion for final approval of the Settlement Agreement, which motions will be decided by the Court after a fairness hearing. See Fed. R. Civ. P. 23(h).

11. In addition to his individualized award, Representative Plaintiff, who actively participated in this suit and spent many hours working with Class Counsel, will apply for a Service Payment of $7,500, in recognition of his service to the Class. Plaintiff will seek the Service Payment in his motion for final approval.

3

## II.     CERTIFICATION OF THIS ACTION AS A CLASS ACTION

12. Pursuant to the Parties' Settlement Agreement, Plaintiff has now moved for preliminary approval of this action as a class action under Fed.R.Civ.P. 23(b)(3).

13. Subject to notice, and the opportunity for class members to object, this Court hereby certifies this action as a class action for a Class defined as:

> All current and former employees of Cannery Casino Resorts, LLC and Washington Trotting Association, Inc., who worked as Table Games Dealers (including poker dealers and dual rate dealers) at the Meadows Racetrack and Casino in Washington County, Pennsylvania from July 1, 2010 through December 31, 2013.

14. The Class is sufficiently numerous, insofar as the parties agree that the number of class members exceeds 350, which is more than sufficient to certify a class. See Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 594 (3d Cir. 2010), recognizing that "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."

15. Commonality under FRCP 23(a)(2) requires a single common question of law or fact—that is, a common contention capable of class-wide resolution. Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011); Rodriguez v. Nat'l City Bank, 726 F.3d 372, 380 (3d Cir. 2013).

16. Common questions of fact and law to which there are common answers exist because Plaintiff alleges that the entire Class was subject to the same rounding policy and practices and required to attend unpaid pre-shift meetings, resulting in Defendants' alleged failure to pay them, collectively, for upwards of 20,000 hours of work time.

4

17. Questions of fact and law common to the Class include:

   a. Did Defendants pay the Class all wages owing for pre- and post- shift work?

   b. Were Class members paid overtime when they worked in excess of 40 hours per week?

   c. Did Defendants keep accurate records of hours worked and wages paid?

   d. Did Defendants breach its contractual obligation to the Class?

   e. Did the failure to pay Class members for pre- and post- shift work violate the state Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.* ("WPCL")?

   f. Did Defendants violate the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), Pennsylvania Minimum Wage Act, 43 P.S. § 333 *et seq.* ("PMWA"), and WPCL by failing to pay the Class for hours worked in excess of 40 per week?

   g. Can the Class recover liquidated damages under the WPCL for unpaid pre- and post- shift work?

   h. Were Defendants unjustly enriched?

18. Plaintiff's claims for unpaid wages, overtime and penalties for pre- and post-shift work, satisfy commonality, as they arise from the same compensation policies and practices. See Keller v. TD Bank, 2014 WL 5591033, at *5 (E.D.Pa. Nov.4, 2014) (commonality met where employer pre- or post- shift security procedures required all retail employees to work off-the-clock when opening or closing a branch).

19. Rule 23(a)(3) requires that claims or defenses of representative parties are typical of the class as a whole. "The concepts of typicality and commonality are closely related and often tend to merge." Marcus, 687 F.3d at 598 (citing Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994)). Typicality is met where, as here, the named plaintiff and absent Class members rely on the same or similar legal theories and do not conflict. See In re Schering Plough Corp.

5

ERISA Litig., 589 F.3d 585, 597 (3d Cir. 2009); Georgine v. Amchem Products, Inc., 83 F.3d 610, 627 (3d Cir. 1996); see also In re Community Bank, 418 F.3d 277, 303 (3d Cir. 2005) (typicality does not require that the claims of all class members be identical).

20. The adequacy inquiry of Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." Beck v. Maximus, Inc., 457 F.3d 291, 296 (3d Cir. 2006). In addition, plaintiffs' attorneys must be qualified, experienced, and generally able to conduct the litigation. See In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 532 (3d Cir. 2004).

21. Rule 23(a)(4) is satisfied with respect to Representative Plaintiff Yanchak. He has no current relationship with Defendants except as Representative Plaintiff and has no conflict of interest in maintaining a class action. He is a member of the Class he seeks to represent and has a common stake in the outcome, along with the Class. He has an incentive to seek appropriate Class-wide relief, is familiar with the conduct challenged, and has been vigorously representing the Class.

22. Representative Plaintiff is represented by counsel who have vigorously represented the interests of the Class to date, and will continue to do so. Plaintiff's counsel have many years of experience in civil rights, employment law, and class action law suits. They have advanced the costs and expenses associated with this case contingent on the outcome.

23. Also with respect to counsel, the requirements of Rule 23(g) are satisfied. Rule 23(g) requires a court to appoint class counsel when it certifies a class. Class counsel must "fairly and adequately represent the interests of the class." Fed.R.Civ.P. 23(g)(4) To evaluate counsel, a court must consider: (i) work done in identifying or investigating claims; (ii) experience handling class actions and claims of the type asserted; (iii) knowledge of the

applicable law; and (iv) the resources counsel will commit to representing the class. Fed.R.Civ.P. 23(g)(1)(A).

24. Here, Plaintiff's counsel have performed substantial work in investigating and identifying potential claims in this action, filing this litigation and expending substantial time and resources towards litigation of Defendant's motion to dismiss and the settlement process.

25. The Court is familiar with Plaintiff's counsel considerable experience handling class actions, complex litigation, and employment litigation. Plaintiff's counsel have extensive knowledge of the applicable law; and Plaintiff's counsel have sufficient resources, and the intention to commit those resources, to representing the Class. Plaintiff's counsel will adequately and fairly represent the Class. Thus, this Court appoints John Stember, Maureen Davidson-Welling, and Jonathan K. Cohn as Class Counsel.

26. Plaintiff's claims for class-wide monetary relief for all Class Members is properly certified under Rule 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this case. This case turns on the common questions of law and fact described above. There are no claims, like detrimental reliance or other private arrangements, which call for individual proof. Plaintiff alleged that Defendants' rounding policy and other practices deprived them of wages for work performed. Class' interests are aligned and unified, and common questions predominate.

27. In addition, Plaintiff and the Class lack resources to prosecute individual actions, and no individual suits have been filed by Class Members. Litigating these claims here is desirable, as the wrongful conduct alleged occurred here. A class action will achieve economies of scale, conserve judicial resources, and avoid repetitive proceedings or inconsistent decisions.

## III.    PRELIMINARY APPROVAL OF CLASS SETTLEMENT

28. This Court hereby preliminarily approves the Parties' Settlement Agreement, subject to notice to the Class and a Fairness Hearing, for the reasons set forth in this Order. The Court employs a two-step process for preliminarily approving a class settlement, whereby first, the Court considers preliminarily whether any obvious problems exists with the settlement, determines whether the class should be certified for settlement purposes and evaluates the parties' proposed plan for notifying class members. If the court finds that preliminary approval is warranted, the case proceeds to a fairness hearing where the concerns of class members, who have received notice of the proposed settlement, are received and considered by the court before making a determination of whether final approval should be granted. See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 777-78 (3d Cir. 1995); Harlan v. Transworld Systems, Inc., 302 F.R.D. 319, 324-27 (E.D. Pa. 2014).

29. Whether a settlement is fair, reasonable, and adequate is evaluated under the nine-factor test enunciated in Girsh v. Jepson, 521 F.2d 153, (3d Cir. 1995). See Delandro v. Co. of Allegheny, 2011 WL 2039099, at * 11 (W.D. Pa. May 24, 2011). Girsh directs district courts to examine:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater settlement; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risks obligation.

Delandro, 2011 WL 2039099, at *11. An initial presumption in favor of settlement applies where: "(1) settlement negotiations were at arms' length; (2) there was sufficient discovery;

8

(3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." Sullivan v. DB Invs., Inc., 667 F.3d 273, 320 n.54 (3d Cir. 2011).

30. Based on Plaintiff's evaluation of the information Defendants supplied, the $350,000 settlement pool represents more than 116% of unpaid hourly and overtime wages, including FLSA liquidated damages for unpaid overtime. It also includes a significant payment (about $45,000) for liquidated damages available under the WPCL.

31. Each Authorized Class Member will receive close to $1.00 for each shift worked during the Class Period—the equivalent of approximately eight minutes for each shift worked.

32. Defendants agree to amend the Meadows' employee handbook to include language stating, "Employees are never required or encouraged to work off the clock. If an employee has any question or concern regarding his/her pay the employee shall bring that question to Human Resources who will promptly investigate the employee's concern." The revised handbook will be given to all current Meadows' employees.

33. The Court concludes that the settlement in this case meets the requirements for preliminary approval. The parties contested each other's dispositive motions, engaged in discovery, and entered into protracted negotiations. Negotiations were hard-fought and most certainly arm's-length, and produced a result that experienced counsel believe is in the best interests of the Class. See In re Gen. Instrument Sec. Litig., 209 F.Supp.2d 423, 431 (E.D. Pa. 2001) ("Significant weight should be attributed to the belief of experienced counsel that the settlement is in the best interests of the class."); In re Corel Corp. Sec. Litig., 293 F. Supp. 2d 484, 491 (E.D. Pa. 2003) ("Courts generally recognize that a proposed class action settlement is presumptively valid where, as in this case, the parties engaged in arm's length negotiations after

9

meaningful discovery."). The risks of proceeding with the litigation favor preliminary approval of the settlement. See In re Cendant Corp. Litig., 264 F.3d 201, 237-39 (3d Cir. 2001).

34. In sum, review of the Parties' conduct and material terms of the Settlement Agreement have persuaded the Court that preliminary approval of the settlement is proper, that a fairness hearing should be held and that the Class Notice should be sent out so that Class members may react to the terms of the settlement.

### IV. APPROVAL OF METHOD FOR DISSEMINATING NOTICE TO CLASS AND FORM OF CLASS NOTICE

35. The Parties have proposed and the Court agrees that within twenty eight (28) days of the entry of this Order, individual notice shall be sent by the agreed-upon Claims Administrator, via first-class mail, will mail to each class member at his or her last known address. The Class Notice and the Request for Exclusion Form are attached as Exhibits A and B, respectively, to the Settlement Agreement.

36. The Court approves the form of the Class Notice. The Court finds the Class Notice is written in understandable language, adequately describes for Class members the essential terms of the settlement, and provides information Class members will need to decide whether to object or opt-out.

### V. INJUNCTION OF ABSENT CLASS MEMBERS' LITIGATION OF RELEASED CLAIMS UNTIL FILING OF REQUEST FOR EXCLUSION

37. The Court enjoins Plaintiff and all Class Members from filing or prosecuting any other cases, claims, suits or administrative proceedings regarding claims released by the Settlement unless and until such Class Members have filed valid Requests for Exclusion with the Claims Administrator.

## VI. FINAL CERTIFICATION OF THE PROPOSED RULE 23 SETTLEMENT CLASS

38. The Court sets the following timetable for actions to be taken pursuant to this Order:

| Event | Time for Compliance |
|---|---|
| Deadline for mailing of Class Notice and Request for Exclusion Form | ~~28 calendar days after entry of Preliminary Approval Order or~~ MAY 31, 2016 |
| Deadline for filing memorandum in support of final approval of settlement, and application for attorneys' fees, reimbursement of costs and expenses, and service awards to Representative Plaintiff | ~~30 calendar days before fairness hearing~~ or August 25, 2016 |
| Deadline for returning Request for Exclusion Form to Claims Administrator | ~~45 calendar days after mailing of Class Notice or~~ July 15, 2016 |
| Deadline for filing objections, appearance of counsel regarding objections, and notice of intention to appear at fairness hearing | ~~45 calendar days after mailing of Class Notice or~~ July 15, 2016 |
| Fairness hearing Sept. 23, 2016 12:30 P.M. Courtroom 6A. | ~~At least 75 days after the mailing of Class notice or~~ |

SO ORDERED,

Dated: APRIL 28, 2016

_____
Mark R. Hornak
United States District Judge

cc:   All parties of record.

11